1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LUIS LEDESMA,

Plaintiff,

v.

STATE OF NEVADA, et. al.,

Defendants.

3:13-cv-00102-MMD-WGC

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment. (ECF No. 124.)[1] Plaintiff filed a response (ECF No. 128) and Defendants filed a reply (ECF No. 129).

After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate incarcerated within the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl., ECF No. 11.) He is proceeding pro se in this action brought pursuant to 42 U.S.C. § 1983. (*Id.*) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*) Defendants are Audy Vilora, Christopher Trautman, Lawrence Ponozzo, Marty Lefler, Victor Daniel, Sean Brooks, Richard Smith, Jason Volden, Jamie Stevens, Benjamin Kyker, and Lamar Gibson.[2]

---

[1] Refers to court's electronic case filing (ECF) number.

[2] Defendants Guerrero and Espinoza were dismissed without prejudice on June 26, 2015, as a result of Plaintiff's failure to timely serve them pursuant to Federal Rule of Civil Procedure 4(m). Defendants Smith and

1    Plaintiff was allowed to proceed with the following claims: (1) an Eighth Amendment

2    failure to protect claim in Count I against Vilora, Troutman and Ponozzo; (2) a retaliation claim

3    in Count VI against Guerrero and Lefler; (3) a retaliation claim in Count VII against Lefler,

4    Daniel and Brooks; (4) an Eighth Amendment claim of excessive force in Count VIII against

5    Lefler, Daniel and Brooks; (5) an Eighth Amendment excessive force claim in Count IX against

6    Smith, Gibson, Volden, Espinoza, Stevens, and Brooks; (6) an Eighth Amendment excessive

7    force claim in Count X against Smith, Gibson, Volden, Espinoza, Stevens, and Brooks; (7) an

8    Eighth Amendment deliberate indifference claim in Count XI against Smith, Gibson, Volden,

9    Espinoza, Stevens, and Brooks; (8) a retaliation claim in Count XIII against Guerrero, Lefler,

10   and Daniel; and (9) a retaliation claim against Kyker in Count XVI. (ECF No. 11; Screening

11   Order, ECF No. 9.)

12       In Count I, Plaintiff alleges that during classification on February 25, 2011, he requested

13   and was subsequently placed in protective custody (PC). (ECF No. 11 at 11.) On March 22,

14   2011, Vilora and Troutman were working in the Unit 8 control bubble which opens and closes

15   the doors to the unit, while Ponozzo was working on the unit floor. (*Id.*) He avers that the

16   officers ordered him to exit his cell during general population exercise time (when PC inmates

17   are supposed to be segregated from general population inmates), resulting in Plaintiff being

18   assaulted by five known gang members (from whom Plaintiff had sought protection in the first

19   place). (*Id.*) He claims he was beaten by the gang members for five minutes or more. (*Id.*) He

20   mentions that these officers had regularly made sure that Plaintiff exercised in segregation from

21   general population inmates. (*Id.*)

22       In Count VI, Plaintiff alleges that on September 15 or 16, 2011, Plaintiff wrote a letter to

23   the warden concerning previous incidents of what he considered retaliatory harassment by Lefler

24   and Guerrero, and Plaintiff also spoke to the warden about his concerns. (*Id.* at 16.) He avers that

25   the warden admonished the officers to stop harassing Plaintiff. (*Id.*) Then, on September 17,

26   2011, Plaintiff alleges that in retaliation for his actions, Lefler and Guerrero intentionally

27

28   Gibson were substituted in place of defendants originally identified by Plaintiff in the amended complaint as Spivvy
     and Garlet, respectively. (*See* ECF No. 11 at 7, 19, 21; ECF No. 59.)

tampered with Plaintiff's food by throwing a liquid substance on his tray and giving him heated milk. (*Id.*)

In Count VII, Plaintiff alleges that he asked Lefler for an emergency grievance to address the food tampering asserted in Count VI. (*Id.* at 17.) Plaintiff received the grievance and turned it in, but feared the officers would retaliate against him. (*Id.*) Later that day, Plaintiff was let out of his cell for a haircut. (*Id.*) After his haircut, Brooks, Daniel and Lefler escorted Plaintiff back to his cell. (*Id.*) Lefler and Daniel began harassing Plaintiff, and Plaintiff asked them what their problem was. (*Id.*) At that point, Lefler and Daniel restrained Plaintiff, cuffed him using painful restraint tactics, smashed his head into the wall and pounded it into the ground. (*Id.*) He claims that Brooks stood by while Lefler and Daniel engaged in this use of force. (*Id.*) He asserts that Lefler and Daniel did this in retaliation for Plaintiff's grievance activity. (*Id.*) In Count VIII, he claims that Lefler and Daniel used excessive force during this incident, and Brooks stood by watching. (*Id.* at 18.)

In Count IX, Plaintiff alleges that after the beating described in Counts VII and VIII, Brooks summoned officers Smith, Gibson, Volden, Espinoza, and Stevens. (*Id.* at 19.) Plaintiff alleges that these officers beat him, while he was in handcuffs and restrained, for twenty minutes, while Brooks stood by and watched. (*Id.*) After this beating, Plaintiff acknowledges that a nurse arrived and took pictures of Plaintiff and treated his wounds. (*Id.*)

In Count X, Plaintiff alleges that when the nurse left the scene described in Count IX, the same officers beat Plaintiff again, while Brooks stood by watching. (*Id.* at 20.)

In Count XI, Plaintiff avers that after the beating alleged in Count X, the officers left Plaintiff beaten and bloody in his cell, ignoring his requests for medical attention. (*Id.* at 21.)

In Count XIII, Plaintiff alleges that he was eventually taken to the infirmary after the beating alleged in Count X, and when he returned, he discovered all of his paperwork, including his grievance documentation had been destroyed. (*Id.* at 23.) He alleges that Guerrero, Lefler and Daniel were responsible for destroying the grievances. (*Id.*)

Lastly, in Count XVI, Plaintiff alleges that on September 18, 2011, he was out for his exercise time and on the phone when Sergeant Kyker retaliated against him by cutting his

1  exercise time short and then writing a notice of charges against him falsely stating that Plaintiff

2  had to be physically removed from the phone. (*Id*. at 26.)

3      Defendants now move for summary judgment. (ECF No. 124.)

4                    **II. LEGAL STANDARD**

5      "The purpose of summary judgment is to avoid unnecessary trials when there is no

6  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

7  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

8  judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

9  525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

10  (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

11  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12  Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

13  issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14  250 (1986).

15      A party asserting that a fact cannot be or is genuinely disputed must support the
        assertion by:

16      (A) citing to particular parts of materials in the record, including depositions,
        documents, electronically stored information, affidavits or declarations,

17      stipulations (including those made for purposes of the motion only), admissions,
        interrogatory answers, or other materials; or

18      (B) showing that the materials cited do not establish the absence or presence of a

19      genuine dispute, or that an adverse party cannot produce admissible evidence to
        support the fact.

20  Fed. R. Civ. P. 56(c)(1)(A), (B).

21      If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

22  made on personal knowledge, set out facts that would be admissible in evidence, and show that

23  the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

24      In evaluating whether or not summary judgment is appropriate, three steps are necessary:

25  (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

26  to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

27  *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

28

the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

## III. DISCUSSION

**A. COUNT I**

### 1. Allegations

In Count I, Plaintiff alleges that on March 22, 2011, he was in PC when Vilora, Troutman and Ponozzo knowingly, intentionally, and maliciously released him during exercise time for general population inmates. As a result, he was attacked and beaten by five known gang members from whom he had been seeking protection by being placed in PC.

### 2. Defendants' Argument

Defendants argue that on February 22, 2011, Plaintiff requested to be placed into protective custody due to problems associated with a particular gang. (ECF No. 124 at 2; Pl.'s Depo. Trans., ECF NO. 124-1 at 10:9-16, 11:4-14.) The on March 22, 2011, Plaintiff was let out of his cell and was attacked by several gang members. (ECF No. 124 at 2; Pl.'s Depo. Trans., ECF NO. 124-1 at 16:3-14.)

Plaintiff asserts that Ponozzo and Trautman stood behind the gate watching while the assault occurred, while Vilora was in the bubble. (ECF No. 124 at 2.) Yet Plaintiff never told Ponozzo that he should not be let out, but assumed Ponozzo knew. (ECF No. 124 at 2; Depo. Trans., ECF NO. 124-1 at 23:8-13.) Defendants claim that immediately after the search and

1    escort team (S&E) arrived to break up the fight, Plaintiff was taken to the center bubble area and

2    was seen by medical. (ECF No. 124 at 2; Depo. Trans., ECF NO. 124-1 at 27:1-15; 28:20-23.)

3    Medical cleared Plaintiff, and he did not require further treatment in the infirmary. (ECF No. 124

4    at 2; Depo. Trans., ECF NO. 124-1 at 30:16-21.) Defendants contend that Plaintiff admitted that

5    he told the Inspector General's Office (IG) that prior to being let out of his cell, he had kited to

6    be on "walk alike" as opposed to "walk alone" status, and this is the reason he did not protest

7    being let out of his cell. (ECF No. 124 at 2: Depo. Trans., ECF NO. 124-1 at 32:6-17.) They

8    acknowledge that he later claimed that he lied to the IG's office about this. (*Id*.)

9           Finally, they argue that only Ponozzo was involved in telling Plaintiff to leave his cell,

10   and neither Vilora nor Trautman were present. (*Id*. at 6.)

11          **2. Plaintiff's Argument**

12          In response to Defendants' argument that Plaintiff requested to be on "walk alike" status,

13   Plaintiff asserts that he was told by the IG that prior to that time that he would be let out of his

14   cell to participate in a sting operation involving an officer who was involved in a suspected drug

15   transaction, and that Plaintiff was instructed not to tell anyone. (ECF No. 128 at 2-3.) This, he

16   says, is why he told the prison investigators that he made a kite for "walk alike" status, since he

17   thought the IG had put the sting in place, which turned out not to be the case. (*Id*. at 3.)

18          Next, Plaintiff asserts that the Defendants knew Plaintiff was protective custody status,

19   and that Ponozzo knew this because he was involved in Plaintiff's initial classification, and

20   Ponozzo saw the fear in his eyes. (*Id*.)

21          **3. Analysis**

22          Under the Eighth Amendment, prison officials have a duty to protect inmates from

23   violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Having

24   incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent,

25   conduct,' having stripped them of virtually every means of self-protection and foreclosed their

26   access to outside aid, the government and its officials are not free to let the state of nature take its

27   course." *Farmer*, 511 U.S. at 833 (internal citations omitted).  "Being violently assaulted in

28

1  prison is simply not 'part of the penalty that criminal offenders pay for their offenses against

2  society.'" *Id*.  at 834 (citing *Rhodes*, 452 U.S. at 347).

3          To establish a violation of this duty, the prisoner must establish that prison officials were

4  "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see*

5  *also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing

6  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate

7  indifference standard, a violation of the Eighth Amendment is only found when an objective and

8  subjective component are met.  *See Farmer*, 511 U.S. at 834; *Labatad*, 714 F.3d at 1160.

9           First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison

10  official's act or omission must result in the denial of 'the minimal civilized measures of life's

11  necessities.'" *Farmer*, 511 U.S. at 834 (citations and quotations omitted).  When a plaintiff

12  claims prison official's failed to take reasonable steps to protect, the plaintiff must show that "he

13  is incarcerated under conditions posing a substantial risk of serious harm."  *Id*. (citations

14  omitted).

15          Second, the inmate must satisfy the subjective element. This means that the prison

16  official must "know of and disregard an excessive risk to inmate health or safety; the official

17  must both be aware of facts from which the inference could be drawn that a substantial risk of

18  serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S.  at 837. "Mere

19  negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

20  1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk

21  of serious harm and disregard that risk by failing to take reasonable measures to abate it.'"

22  *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

23          There is a disputed issue of fact as to whether Plaintiff actually requested to be placed on

24  "walk alike" status, or whether he simply told the investigator after the fact that he did so. As

25  Plaintiff points out, Defendants have not produced a kite containing a request to be placed on

26  "walk alike" status that would have told the Defendants Plaintiff could be released with the

27  general population inmates. Moreover, Plaintiff claims that the Unit 8 staff who were on duty in

28  Plaintiff's unit every day, knew that Plaintiff was protective custody, "walk alone" status. "A

prison official's deliberate indifference may be established through an 'inference from circumstantial evidence' or 'from the very fact that the risk was obvious.'" *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). Taking the facts in the light most favorable to Plaintiff, an inference could be drawn that Ponozzo knew there was a risk in letting Plaintiff out with the general population inmates because he had observed Plaintiff to be protective custody, "walk alone" status prior to this time. In addition, in *Cortez*, the court found that evidence of the officer's unwillingness to intervene once an attack began could demonstrate that the officer exposed the inmate to a substantial risk of harm. *Cortez*, 776 F.3d at 1052. Here, Plaintiff contends that once Ponozzo ordered Plaintiff out of his cell, he left and went behind the gate, and did not intervene in the attack. As in *Cortez*, a jury believing Plaintiff's version of events could reasonably conclude from these facts that Ponozzo disregarded a substantial risk of harm to Plaintiff in ordering him onto the tier with general population inmates.

Defendants assert that Plaintiff should have told Ponozzo if he feared going out onto the tier. On the other hand, Plaintiff contends that he stayed in his cell as long as he could, until he was ordered out by Ponozzo, which is when he was assaulted. (ECF No. 128 at 7; Depo. Trans., ECF NO. 124-1 at 18-19.)

In sum, the court finds that a genuine dispute of material fact exists as to whether Ponozzo knew of and disregarded a substantial risk of serious harm to Plaintiff in letting him out onto the tier. For this reason, summary judgment should be denied as to Ponozzo.[3]

The court finds that summary judgment should be granted as to Vilora as Plaintiff provided no response to Defendants' claim that Ponozzo was the only one that ordered Plaintiff out of his cell, and that there is no evidence that Vilora was responsible for letting him out of his cell. Summary judgment should be denied as to Trautman, however, because Plaintiff testified that Trautman stood with Ponozzo behind the gate and failed to intervene while the attack ensued

---

[3] Defendants do not addresses the allegation in Plaintiff's amended complaint (albeit with respect to a claim that was dismissed) (ECF No. 11 at 12) which is also mentioned in an investigative detail report submitted as one of Plaintiff's exhibits (ECF NO. 128 at 12), that Plaintiff was assaulted by five gang members because Caseworker Greybourne had erroneously classified Plaintiff to general population instead of PC or that the classification sheet mistakenly identified him as "walk alike" status instead of "walk alone" status. Defendants did not present the argument in order for Plaintiff to respond; therefore, the court will not consider it sua sponte.

1    for approximately three to five minutes. (Depo. Trans., ECF No. 124-1 at 17:18-22, 18:2-7.) *See*

2    *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("A prison official can violate a

3    prisoner's Eighth Amendment rights by failing to intervene.").

4    **B. COUNT VI**

5        **1. Allegations**

6        In Count VI, Plaintiff alleges he was retaliated against by correctional officers after he

7    wrote a letter to and met with Warden Brian Williams regarding another asserted retaliatory

8    incident. He contends that Guerrero and Lefler intentionally tampered with his food on

9    September 17, 2011, by throwing a liquid substance on his food tray and delivering his milk

10   heated.

11       **2. Defendants' Argument**

12       According to Defendants, on September 17, 2011, Plaintiff testified that he refused his

13   food tray because, even though he did not know exactly why, he felt the food had been tampered

14   with. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 32:22, 33:18.) He also complained his

15   milk was hot, but did not see either Lefler or Guerrero heat his milk. (ECF No. 124 at 3: Depo.

16   Trans., ECF NO. 124-1 at 34:12-21.)

17       Defendants argue that Plaintiff alleges a one-time de minimis adulteration of his food tray

18   and milk, which is insufficient to state a claim. (ECF No. 124 at 7.) In addition, they argue that

19   Plaintiff cannot demonstrate personal participation because Plaintiff testified he does not actually

20   know who tampered with his food. (*Id*.)

21       **3. Plaintiff's Argument**

22       Plaintiff asserts that he was "cell fed by staff" because his enemies, the Surenos, were the

23   porters. (ECF No. 128 at 3.) In addition, he claims that the shift logs show that Guerrero and

24   Lefler worked in the unit that day. (*Id*.) Finally, he argues that these defendants were the subject

25   of his emergency grievance and were reprimanded by Warden Williams, and this proves that

26   they tampered with his food. (*Id*.)

27   ///

28   ///

**4. Analysis**

The fact that Guerrero and Lefler were working the day Plaintiff contends his food was tampered with is not evidence that they did the tampering. The fact that Plaintiff subsequently accused them of this conduct in his emergency grievance also fails to support a finding that they in fact tampered with Plaintiff's food. Finally, while Plaintiff contends that these defendants were reprimanded by Warden Williams for this conduct, the evidence does not demonstrate this to be the case. The investigatory report Plaintiff submitted does state that Plaintiff and Guerrero had many issues, that the matter was referred for investigation and Warden Williams represented to Plaintiff he would talk to the officers (ECF No. 128 at 28-29), but it does not state that the officers were reprimanded specifically for tampering with Plaintiff's food, as Plaintiff suggests. Plaintiff's own allegations assert that the alleged food tampering took place *after* Plaintiff's meeting with Warden Williams.

Plaintiff has not provided evidence linking these Defendants to the alleged conduct. Therefore, the court recommends that summary judgment be granted as to Count VI.

**C. COUNTS VII AND VIII**

**1. Allegations**

In Counts VII and VIII, Plaintiff alleges that after the incidents alleged in Count VI, he filed an emergency grievance to address the alleged tampering with his food. Defendants Lefler and Daniel thereafter attacked him in retaliation for the grievance while he was being escorted back to his cell after a haircut. He claims they used painful restraint techniques in cuffing and restraining him and then smashed his head into the walls and floor while twisting his cuffed arms. He alleges that Brooks stood by during the attack and did not intervene.

**2. Defendants' Argument**

According to Defendants, Plaintiff wrote an emergency grievance regarding the condition of his tray. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 36:2-6.) The grievance was processed. (ECF NO. 124 at 3; Ex. B, ECF No. 124-2, Grievance Log for 20062931844.)

Later that day, Plaintiff got a haircut in the bubble area. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 41:12-17.) Plaintiff claims that Daniel and Lefler were verbally harassing

him. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 41:19.) In response, Plaintiff said, "What's your problem?" (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 42:6-11.) They claim that he was uncuffed at the time, and raised his hands with his palms out. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 42:13-25.) Only after making that gesture did the officers "attack him." (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 43:1-3.) Plaintiff claims he was slammed into the wall and pushed against it while S&E was called to assist. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 43:14-18.) Plaintiff used profanity toward the officers while awaiting S&E. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 45:1-8.) They contend that Brooks was not present while Lefler and Daniel placed Plaintiff against the wall. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 47:1-7, 48:22-49:1.)

Defendants argue that earlier that day, Plaintiff had threatened Daniel and Guerrero with physical violence and challenged them to open his cell door, which resulted in him being written up and found guilty of disciplinary charges. (ECF No. 124 at 8, Ex E, ECF No. 124-5.) They also asset that Plaintiff admits he was confrontational with Lefler and Daniel, and used profanity. (ECF No. 124 at 8.)

As to the retaliation claim, they argue that the use of force to restrain Plaintiff was not because he filed an emergency grievance, but because of his conduct and the potential threat he posed. (*Id.*) In addition, they argue that there is a legitimate correctional goal in restraining an inmate who is confronting staff while raising his hands to them. (*Id.* at 8-9.)

Insofar as the excessive force claim is concerned, they reiterate that Plaintiff was challenging them while raising his hands, and to the extent force was used, it was not to inflict pain, but to stop Plaintiff from becoming physical. (*Id.* at 9.)

Finally, they argue that Plaintiff admits that Brooks was only present to the point in time where he raised his hands, and then left to call S&E for backup when Lefler and Daniel allegedly used force. (*Id.* at 9-10.) Therefore, they maintain that summary judgment should be granted in Brooks' favor. (*Id.*)

///

///

1

**3. Plaintiff's Argument**

2   Plaintiff argues that he did not admit he was confrontational, and his gesture did not

3   indicate an attack. (ECF No. 128 at 4.) He contends he was already in handcuffs during this use

4   of excessive force. (*Id*.) As for Brooks, Plaintiff argues he never completely left the scene, and

5   was there when the initial assault happened (when Plaintiff was thrown against the wall), and

6   therefore, he could have intervened to prevent further attack, but did not. (*Id*.)

7   **4. Analysis**

8   **i. Count VII- Retaliation**

9   To establish a claim of retaliation, Plaintiff must prove: (1) a state actor took adverse

10   action against him; (2) because of; (3) Plaintiff's protected conduct, and that such action;

11   (4) chilled the exercise of his First Amendment rights; and (5) the action did not reasonably

12   advance a legitimate correctional goal. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015)

13   (citation omitted).

14   Defendants argue that they used force against Plaintiff not because of Plaintiff's First

15   Amendment activity (filing of the grievance), but because of his conduct and the threat he posed.

16   Plaintiff points to evidence that Defendants used excessive force against him the very same day

17   that he filed an emergency grievance regarding Lefler tampering with his food.

18   A plaintiff must submit evidence, either direct or circumstantial, to establish a link

19   between the exercise of constitutional rights and the allegedly retaliatory conduct. *Pratt v.*

20   *Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). The plaintiff "need only put forth evidence of

21   retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of

22   material fact as to [the defendant's] intent[.]" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir.

23   2009) (internal quotation marks and citation omitted). Timing of the events surrounding the

24   alleged retaliatory action may constitute circumstantial evidence of retaliatory intent. *See*

25   *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Plaintiff's evidence

26   regarding the timing of events is sufficient to create a genuine dispute of material fact as to the

27   motivation for the use of force.

28

1    In addition, while Defendants argue that there is a legitimate correctional goal in

2    restraining an inmate who is confronting staff while raising his hands to them, Plaintiff maintains

3    he was not confrontational and was in handcuffs at this point.

4    Based on this record, the court finds that a genuine dispute exists as to several material

5    facts such that Defendants' motion should be denied as to the retaliation claim in Count VII.

6    **ii. Count VIII- Excessive Force**

7    The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

8    Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

9    humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

10   quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

11   unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475

12   U.S. 312, 319 (1986)).

13   "[W]henever prison officials stand accused of using excessive physical force in violation

14   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

15   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

16   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

17   *McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

18   Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm,

19   contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

20   475 U.S. at 327).

21   In determining whether the use of force is excessive, courts are instructed to examine

22   "the extent of the injury suffered by an inmate[;]" "the need for application of force, the

23   relationship between that need and the amount of force used, the threat 'reasonably perceived by

24   the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

25   *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

26   An inmate need not establish serious injury; however, the lack of serious injury is

27   relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

28   "The extent of injury may also provide some indication of the amount of force applied." *Id.*

Defendants do not describe what amount of force was used, but contend it was used to restrain Plaintiff who had been confrontational and raised his hands to Defendants. They further argue that Brooks had no involvement in the use of force.

Plaintiff, on the other hand, disputes that he was being confrontational, and maintains that he was already in handcuffs when the force was used. Plaintiff also testified that Brooks was the one that grabbed him and put him against the wall, and that he believes Brooks' cuffs were used, but Brooks did not put them on Plaintiff. (Depo. Trans., ECF NO. 124-1 at 43:9-12.) Once he was restrained, Brooks walked away, and Lefler and Daniel slammed him into the wall and pressed his body against the wall. (Depo. Trans., ECF NO. 124-1 at 43:14-17.) Plaintiff claims that Brooks saw Lefler and Daniel slam him into the wall, and could have done something to intervene in the attack.

The court finds that a genuine dispute of material fact exists as to whether force was applied in a good-faith effort to maintain or restore discipline, as Defendants' suggest, or maliciously and sadistically to cause harm, which is Plaintiff's position. Therefore, the motion should be denied as to the excessive force claim in Count VIII against Lefler, Daniels and Brooks.

**D. COUNT IX**

**1. Allegations**

In Count IX, Plaintiff alleges that following the incidents alleged in Counts VII and VIII, officers including Smith, Gibson, Volden, Espinoza, and Stevens were called to the unit where Lefler and Daniel had Plaintiff cuffed and subdued in restraints, and the officers beat him for another twenty minutes, maliciously and without cause. He claims that Brooks again did not try to stop the attack.

**2. Defendants' Argument**

Defendants assert that when S&E arrived after the incident described above, defendants Smith, Gibson, Volden, Espinoza, Stevens, Lefler and Daniel were present. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at 49:5-17, 49:24-50:2.) They assert that Plaintiff testified Brooks

1  witnessed the event, but then took himself out of the event. (ECF No. 124 at 3; Depo. Trans.,

2  ECF NO. 124-1 at 53:16-21.)

3       Defendants point out that Plaintiff believes Volden was there and may have taken part in

4  the use of force, but testified that he does not know for sure because Volden was behind him.

5  (ECF No. 124 at 4; Depo. Trans., ECF NO. 124-1 at 52:21-23.) Defendants assert that Plaintiff

6  testified that Gibson was talking, but was not a party to the use of force. (ECF No. 124 at 4;

7  Depo. Trans., ECF NO. 124-1 at 54:4-8.) In addition, they state that Plaintiff testified that Smith

8  was in an entirely different cart that the one in which Plaintiff claims he was being held down.

9  (ECF No. 124 at 4; Depo. Trans., ECF NO. 124-1 at 54:13-20.) They also argue that while

10  Plaintiff believes Stevens was there, he testified that he could not see him and does not know

11  what role, if any, Stevens played in the use of force. (ECF No. 124 at 4; Depo. Trans., ECF NO.

12  124-1 at 55:4-7.)

13       Plaintiff alleges that seven officers engaged in a twenty minute beating, but Defendants

14  argue that claim is belied by the medical records. (ECF No. 124 at 10.) Medical staff arrived

15  while force was still being used. (*Id.*; Ex. F, ECF No. 125-1.) They state that the nurse's report

16  does not note that the force used was excessive. (*Id.*) They also point out that when Plaintiff was

17  asked for a statement, he said they were "hurting him," not that he was being beaten. (*Id.*) In

18  addition, Defendants argue that Plaintiff did not suffer injuries consistent with a twenty-minute

19  attack by multiple officers. (*Id.*) Instead, he had only redness to his chest, shoulder, lower back

20  and cheeks, and slight abrasions under his left eye and on his knee. (*Id.*) They contend the

21  medical evidence is consistent with someone behind held down on a utility cart while being

22  combative. (*Id.* at 11.)

23       In a footnote, Defendants argue that Gibson, Smith and Volden should be dismissed from

24  this lawsuit as they could not have been involved in the events alleged. (ECF No. 124 at 11 n. 5.)

25  Plaintiff was housed in Unit 7 on September 17, 2011. (*Id.*; Ex. G, ECF No. 124-7.) Gibson was

26  assigned to Unit 3 graveyard shift that day, and left the facility at 6:00 a.m. (*Id.*; Ex. H, ECF No.

27  124-8.) Smith was off-site that day doing a medical transport. (*Id.*); Volden was assigned to the

28  visiting room that day. (*Id.*)

### 3. Plaintiff's Argument

Plaintiff argues that a nurse's opinion as to whether the beating was excessive has no bearing on his claim. (ECF No. 128 at 5.) He asserts that his deposition testimony shows that Defendants acted maliciously. (*Id.*) He also disputes Defendants' contentions that certain of the defendants were not present.

### 4. Analysis

The standard for an Eighth Amendment excessive force claim is set forth above in connection with Count VIII. The court finds that a genuine dispute exists with respect to various material facts precluding the court from granting summary judgment in Defendants' favor on this claim.

First, Defendants argue that no excessive force was used because the nurse's note in the medical report does not describe the force used as excessive. The court agrees with Plaintiff that the lack of a notation by the nurse that the force used was excessive is immaterial to the legal determination of excessive force. The nurse's report states that the use of force was in progress when medical arrived, and that Plaintiff had multiple red areas on his chest, left anterior shoulder, lower back, and both cheeks; he had slight abrasions under the left eye and right knee, and two abrasions to the left lower side that were the size of a nickel. (ECF No. 125-1.) This is sufficient evidence to raise a genuine dispute of material fact concerning whether force was used, and the extent of the injury suffered by Plaintiff.

Second, Defendants reliance on semantics to defeat Plaintiff's claim is unpersuasive. Defendants argue that Plaintiff's claim of excessive force is unsupported because the subjective portion of the medical report states that Plaintiff indicated the defendants were "hurting" him, but he did not say they were "beating him." It would be illogical for the court to conclude that no excessive force was used simply because Plaintiff said Defendants were "hurting" him, and did not use the word "beating." In fact, the subjective description that Defendants were "hurting" him creates a genuine dispute of material fact as to whether the force was applied in order to restore discipline or maliciously and sadistically.

1    Third, Defendants contend that Plaintiff did not suffer injuries consistent with a twenty

2  minute attack, as Plaintiff alleged. Regardless of how long the attack lasted, the record

3  indisputably establishes that Plaintiff suffered injuries as a result of the use of force. As the

4  Supreme Court noted, "[i]njury and force ... are only imperfectly correlated, and it is the latter

5  that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability

6  to pursue an excessive force claim merely because he has the good fortune to escape without

7  serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

8    Next, Defendants argue that there is insufficient evidence that certain Defendants

9  participated in the use of force. They assert that Plaintiff testified Brooks witnessed the event,

10  but then took himself out of the event. (ECF No. 124 at 3; Depo. Trans., ECF NO. 124-1 at

11  53:16-21.) Plaintiff testified, however, that Brooks witnessed everything, and did not intervene.

12  (Depo. Trans., ECF NO. 124-1 at 53:16-19.)

13    Defendants then assert that Plaintiff testified that he was not sure what role Volden

14  played because he was behind him, but Plaintiff also testified that he is sure Volden was there

15  because he looked up and saw him next to Lefler. (Depo. Trans., ECF NO. 124-1 at 52:4-10,

16  52:21-25, 53:1-3.) In a footnote, Defendants argue that Volden was assigned to the visiting room

17  that day, but also acknowledge Plaintiff's deposition testimony placing him at the scene.

18    Defendants assert that Plaintiff testified that Gibson was talking, but was not a party to

19  the use of force. (ECF No. 124 at 4; Depo. Trans., ECF NO. 124-1 at 54:4-8.) In addition, they

20  state that Plaintiff testified that Smith was in an entirely different cart that the one in which

21  Plaintiff claims he was being held down. (ECF No. 124 at 4; Depo. Trans., ECF NO. 124-1 at

22  54:13-20.) Plaintiff testified that Smith was in the cart in front of the one he was being held in,

23  and when Plaintiff was begging for the officers to stop, Smith said that Plaintiff deserved it, and

24  watched the whole event. (Depo. Trans., ECF NO. 124-1 at 54:12-25, 55:1-3.) Insofar as

25  Defendants argue that Gibson was assigned to another unit, and Smith was off-site that day, they

26  likewise acknowledge Plaintiff's testimony under oath putting them at the scene.

27

28

1    Defendants also argue that while Plaintiff believes Stevens was there, he testified that he

2    could not see him and does not know what role, if any, he played in the use of force. (ECF No.

3    124 at 4; Depo. Trans., ECF NO. 124-1 at 55:4-7.) In fact, Plaintiff's testimony was that he

4    knows Stevens was there, he didn't know exactly where he was, but he vividly remembers him

5    being there. (Depo. Trans., ECF NO. 124-1 at 55:4-11.)

6    Taking the facts in the light most favorable to Plaintiff, if Brooks, Volden, Gibson, Smith

7    and Stevens observed the use of force and did not intervene, that is sufficient for them to remain

8    in this action. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("A prison official can

9    violate a prisoner's Eighth Amendment rights by failing to intervene.").

10    In sum, Defendants' motion should be denied as to the excessive force claim in Count IX.

11    **E. COUNTS X and XI**

12    **1. Allegations**

13    In Count X, Plaintiff alleges that after the nurse left from addressing his injuries from the

14    attack alleged in Count IX, the same officers attacked him again maliciously and without cause,

15    with defendant Brooks again failing to intervene.

16    In Count XI, Plaintiff alleges that after the attack in Count X, the officers, including

17    Brooks, left Plaintiff in a pool of blood in his cell and ignored his pleas for medical attention.

18    **2. Defendants' Argument**

19    Defendants assert that after the event described in Count IX, Plaintiff was brought back

20    into the building by Volden, Lefler, Daniel and Stevens. (ECF No. 124 at 4; Depo. Trans., ECF

21    No. 124-1 at 58:3-11.) He was taken back to his cell and told to uncuff three times, but he

22    refused until he could be seen by medical again as he claimed to have sustained new injuries

23    between the transport cart and his cell. (ECF No. 124 at 4; Depo. Trans., ECF No. 124-1 at

24    58:15-59:19.) They argue that he admits he was not obeying orders. (ECF No. 124 at 4; Depo.

25    Trans., ECF No. 124-1 at 65:19-25.) Then, Stevens and Lefler entered his cell after he continued

26    to refuse to uncuff, and forcibly removed the cuffs. (ECF No. 124 at 4; Depo. Trans., ECF No.

27    124-1 at 60:9-61:7, 66:20-21.) Defendants maintain that the officers left immediately after

28    removing the cuffs. (ECF No. 124 at 4; Depo. Trans., ECF No. 124-1 at 61:15-16.) They argue

that Volden and Daniel were outside the cell and did not participate in this event. (ECF No. 124 at 4; Depo. Trans., ECF No. 124-1 at 62:26-63:1.) After the event, Brooks called medical for Plaintiff again. (ECF No. 124 at 4; Depo. Trans., ECF No. 124-1 at 64:2-10.) Medical was called fairly quickly, as there was not enough time between the event and medical being summoned for the bleeding on Plaintiff's chin to clot. (ECF No. 124 at 4; Depo. Trans., ECF NO. 124-1 at 69:10-12.)

Defendants state that the unusual occurrence report for the second event of September 17, 2011, notes that the event occurred at 11:20 a.m. (ECF No. 124 at 11; Ex. I, ECF No. 125-2.) As such, defendants Gibson, Smith and Volden should be dismissed for the same reasons as set forth as to Count IX. (*Id*.) They argue that Brooks should also be dismissed as Plaintiff admits that after the transport cart event, he was brought back to the building by only Volden, Lefler, Daniel and Stevens. (*Id*. at 12.) They further contend that Daniel should be dismissed because Plaintiff avers it was only Stevens and Lefler who entered his cell. (*Id*.)

Finally, Defendants argue that Plaintiff's claim that his medical needs were ignored is belied by Plaintiff's testimony and medical records. (*Id*.) They assert that Plaintiff admits that Brooks called medical for him again after this event, and he was seen by medical within an hour of the event. (*Id*.; Ex. I, ECF No. 125-2.) They point out that the medical report shows that Plaintiff had an abrasion to the chin and right shoulder, and a swollen and painful ankle, but the chin abrasion did not require stitches, but only cleaning. (*Id*. at 13; Ex. I, ECF No. 125-2.)

**3. Plaintiff's Argument**

First, Plaintiff argues that both Brooks and Smith were senior officers who stood by without intervening at the onset of the attack when Plaintiff was slammed against the wall. (ECF No. 128 at 6.) Plaintiff states that there is no evidence that Smith did not return to the facility while this event occurred. (*Id*.)

He next argues that Lefler and Stevens were directly responsible for the injuries sustained. (*Id*.) He disputes that Lefler and Stevens left the cell immediately after removing the handcuffs. (*Id*.) Instead, he contends that the excessive force was used while Plaintiff was still in handcuffs, lying on the cell floor. (*Id*.)

1    Regarding Count XI, Plaintiff asserts that he cried "man down" in agony, and further

2    injuries were inflicted without getting Plaintiff medical attention. (*Id*. at 7.) Instead, another

3    officer (Brooks) sought medical attention for Plaintiff. (*Id*.)

4    **4. Analysis**

5    It is clear from Plaintiff's testimony that the only defendants present when Plaintiff was

6    brought to his cell were Lefler, Daniel, Stevens and Volden. (Depo. Trans., ECF No. 124-1 at

7    57:6-9, 59:6-8.) Therefore summary judgment should be granted to defendants Smith, Gibson

8    and Brooks in Count X.

9    A genuine dispute of material fact exists, however, as to whether Lefler and Stevens used

10   excessive force, and whether Daniel and Volden failed to intervene in Count X.

11   Plaintiff testified that after he was taken back into the building, he was being escorted by

12   Lefler, Daniel, Stevens and Volden, and Lefler said, "stop," and came behind Plaintiff and

13   grabbed him at the ankles and swiped his legs from under him, causing him to fall face first into

14   the ground. (Depo. Trans., ECF No. 124-1 at 59:1-5.) Then all four of them picked Plaintiff up

15   and carried him to his cell. (Depo. Trans., ECF No. 124-1 at59:5-7.) They threw him into his cell

16   and told him to uncuff, and shut the door. (Depo. Trans., ECF No. 124-1 at 59:8-10.) Plaintiff

17   said no, not until they called medical because he had additional injuries at this point. (Depo.

18   Trans., ECF No. 124-1 at 59:10-13.) Plaintiff called a man-down, and the officers responded,

19   "No, you already seen medical." (Depo. Trans., ECF No. 124-1 at 59:13-16.) They told Plaintiff

20   to uncuff again, and Plaintiff again refused, stating, "No, not until I see medical." (Depo. Trans.,

21   ECF No. 124-1 at 59:15-17.)

22   At that point, the door opened and Stevens came into the cell with Lefler. (Depo. Trans.,

23   ECF No. 124-1 at 59:17-19.) Stevens grabbed him at the shoulders and head, and put his knee

24   between Plaintiff's shoulder blades, while Lefler grabbed his ankles, bended them at the knees,

25   and twisted them at the ankle causing Plaintiff to shout in pain. (Depo. Trans., ECF No. 124-1 at

26   60:17-22.) Stevens then grabbed Plaintiff's head and shoved it down, causing Plaintiff's chin to

27   strike the floor, resulting in Plaintiff bleeding everywhere. (Depo. Trans., ECF No. 124-1 at

28

61:2-5.) At that point, Stevens quickly uncuffed Plaintiff and Stevens and Lefler bolted out of the cell and shut the door immediately. (Depo. Trans., ECF No. 124-1 at 61:15-16.)

While Defendants argue that Plaintiff refused orders to uncuff, Plaintiff presents evidence that he was in his cell, cuffed, on the floor, suggesting that he posed no threat justifying the use of force. Defendants also argue that Stevens and Lefler left immediately after they removed Plaintiff's handcuffs, but Plaintiff's deposition testimony reflects that Stevens and Lefler left the cell only after they inflicted a beating on Plaintiff.

Defendants contend that Volden and Daniel should be granted summary judgment, but Plaintiff testified that they were both present when Plaintiff was initially brought into the building when Daniel swept Plaintiff's legs out from under him causing him to fall face-first on the floor. In addition, he testified that while that while Stevens and Lefler were beating him inside the cell, Volden and Daniel were outside the cell. (Depo. Trans., ECF No. 124-1 at 62:15-25, 63:1.) Since he alleges that Stevens and Lefler closed the door when they left the cell, it is reasonable to infer that the door was open while the force was being used, and while Volden and Daniel were standing outside the cell, but they failed to intervene.

While Defendants attempt to argue that Plaintiff only suffered minimal injuries, it is undisputed that the medical report from this incident documents that Plaintiff suffered multiple injuries after this incident, including new abrasions to the chin and right shoulder, and that Plaintiff complained of pain to his left ankle, which he was unable to flex and demonstrated a limp and swelling. (ECF No. 125-2.)

Therefore, the court recommends that summary judgment be denied as to defendants Lefler, Stevens, Volden and Daniel in Count X.

With respect to Count XI, Plaintiff testified that he consistently requested that the four officers call medical to address his new injuries, and when Lefler and Stevens left his cell, he started yelling "man down." (Depo. Trans., ECF No. 124-1 at 59, 62:12-13, 18-21.) He testified that Brooks came to Plaintiff's cell for count, and saw Plaintiff bleeding and told Plaintiff he was going to call medical. (Depo. Trans., ECF No. 124-1 at 64:2-10.) His ankle was swollen, and he was transported to the infirmary. (Depo. Trans., ECF No. 124-1 at 64:22-25.) He was treated for

1    his injuries. (Depo. Trans., ECF No. 124-1 at 65:13-15.) Plaintiff acknowledges it was not too

2    long before Brooks came and called medical. (Depo. Trans., ECF No. 124-1 at 68:11-15.)

3          A prisoner can establish an Eighth Amendment violation arising from deficient medical

4    care if he can prove that prison officials were deliberately indifferent to a serious medical need.

5    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

6    examination of two elements: "the seriousness of the prisoner's medical need and the nature of

7    the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*,

8    698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

9    2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

10    further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d

11    at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

12          If the medical need is "serious," the plaintiff must show that the defendant acted with

13    deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

14    omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

15    1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

16    even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

17    under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

18    when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

19    official must both be aware of the facts from which the inference could be drawn that a

20    substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

21    511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

22          The court finds that there is no evidence that defendants Smith or Gibson were involved

23    in the events giving rise to this claim; therefore, summary judgment should be granted in their

24    favor as to Count XI. In addition, there court finds there is no evidence that Brooks acted with

25    deliberate indifference to Plaintiff's medical needs. Instead, Plaintiff's own testimony

26    demonstrates that when Brooks arrived to Plaintiff's cell for count, he observed Plaintiff's new

27    injuries and promptly called medical. Therefore, summary judgment should be granted in his

28    favor as to Count XI.

1    Plaintiff testified that he repeatedly asked defendants Lefler, Stevens, Daniel and Volden

2    to call medical after he suffered new injuries, and Defendants denied his requests. This testimony

3    creates a genuine dispute of material fact as to whether defendants Lefler, Stevens, Daniel and

4    Volden were deliberately indifferent to Plaintiff's serious medical needs in Count XI.

5    **F. COUNT XIII**

6        **1. Allegations**

7          In Count XIII, Plaintiff avers that Guerrero, Lefler, and Daniel ransacked his cell while

8    he was in the medical department and destroyed his paperwork and evidence regarding the

9    grievances, in violation of the First Amendment, to interfere with his ability to pursue the

10   grievances and to retaliate for his exercise of the right to petition for redress of grievances.

11       **2. Defendants' Argument**

12         Defendants contend that Plaintiff admits that only copies of grievances that had already

13   been processed were destroyed (and not originals), such that grievances were not prevented from

14   being considered. (ECF No. 124 at 4, 13-14; Depo. Trans., ECF No. 124-1 at 74:23-75:1.) They

15   further argue that Plaintiff admits he does not know who "tossed" his cell, as this occurred while

16   he was at the transport cart. (ECF No. 124 at 4-5, 13-14; Depo. Trans., ECF No. 124-1 at 61:17-

17   24.)

18       **3. Plaintiff's Argument**

19         Plaintiff reiterates his claim that his cell was "tossed up," and that grievances were

20   destroyed. (ECF No. 128 at 7.)

21       **4. Analysis**

22         Plaintiff testified that when he was outside on the transport cart, someone came to his cell

23   and "tossed his cell," destroying his copies of his grievances, but he does not know who did it.

24   (Depo. Trans., ECF No. 124-1 at 61:17-24.) As indicated, *supra*, a Plaintiff must prove, *inter*

25   *alia*, that a defendant took some adverse action against him in order to establish a retaliation

26   claim. Here, Plaintiff presents no evidence in response to Defendants' motion to demonstrate that

27   these defendants were the ones who destroyed his grievances. Therefore, summary judgment

28   should be granted as to Count XIII.

**G. COUNT XVI**

**1. Allegations**

In Count XVI, Plaintiff alleges that Kyker wrote a false notice of charges against him in retaliation for exercising his First Amendment right to petition for redress of grievances.

**2. Defendants' Argument**

Defendants point out that in a footnote in the screening order, the court noted it did not have sufficient information from the pleading to know whether or not Plaintiff's Count XVI allegations were the subject matter of a disciplinary conviction not overturned. (ECF No. 124 at 14.) Defendants assert that the disciplinary conviction was not overturned; therefore, they argue the claim should be barred by *Heck v. Humphrey*. (*Id*.; Ex. C, ECF No. 124-3; Ex. J, ECF No. 124-10.)

In addition, they argue that the charges were written up because Plaintiff refused to get off the phone, telling the officers to "shut up," not because of protected conduct. (*Id*. at 14-15.)

**3. Plaintiff's Argument**

Plaintiff argues that Kyker was aware of what transpired earlier between Plaintiff and Kyker's subordinates, and his actions were further retaliation. (ECF No. 128 at 7.) He also argues that the court can find that Kyker retaliated against Plaintiff without invalidating his disciplinary conviction. (*Id*. at 8.)

**4. Analysis**

Plaintiff testified that on September 18, 2011, he was using the phone during his allotted tier time when Kyker came in, and Kyker and another officer told Plaintiff to "lock it up," cutting his one hour of allotted tier time short. (Depo. Trans., ECF No. 124-1 at 75-78.) Plaintiff proceeded to finish up his phone call, and the officer used profanity in telling him to get off the phone, and Plaintiff told him to "shut up." (*Id*. at 78:2-4.) Plaintiff then hung up the phone, and the officer and Kyker came out of the bubble and Kyker started yelling at him that "if he was there that morning, he would have kicked my teeth in, would have did me worse than what I was[.]" (*Id*. at 78-79:1-11.) Then Kyker let him go. (*Id*. at 80:1-3.)

Kyker apparently later wrote Plaintiff up for disciplinary charges for failing to follow rules and regulations, and Plaintiff was convicted of the charges. (ECF No.124-10.) Plaintiff filed a grievance on the matter, and the grievance was denied, finding that Plaintiff was trying to extend his time on the phone and was ignoring orders to return to his cell when his tier time was over, and that Plaintiff admitted to being "rude & insolent," which supported the disciplinary finding. (ECF No. 124-3 at 4, 10.)

The court finds there is no evidence of any link between Kyker cutting Plaintiff's tier time short or writing him up for disciplinary charges and any protected conduct engaged in by Plaintiff. For instance, there is no evidence that Kyker knew about any grievances filed by Plaintiff when he took this action. Plaintiff's assertion that Kyker knew about the use of force events that took place a few days earlier does not mean that he knew Plaintiff engaged in any protected conduct so as to establish a causal link between Kyker's action and Plaintiff's protected conduct. Instead, the evidence reflects that Kyker filed disciplinary charges based on Plaintiff's refusal to get off the phone when ordered, and for disrespecting the officers (Plaintiff admits he told them to "shut up" and did not immediately get off the phone when ordered). For this reason, the court recommends that Kyker be granted summary judgment as to Count XVI. As a result of this recommendation, the court need not reach Defendants' argument about the claim being *Heck* barred.[4]

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (ECF No. 124) as follows:

(1) **DENYING** the motion as to Ponozzo and Trautman in Count I, and **GRANTING** the motion as to Vilora in Count I;

(2) **GRANTING** the motion as to Count VI;

---

[4] The court does note that Defendants submitted evidence of the disciplinary conviction, but no actual evidence that it was not overturned. Instead they just include that statement in their argument. Nor did they provide evidence, for instance, regarding the disciplinary sanction imposed, such as a loss of statutory sentence credit, so that the court could determine whether the claim necessarily challenges the fact or duration of his confinement.

1    (3) **<u>DENYING</u>** the motion as to Count VII;

2    (4) **<u>DENYING</u>** the motion as to Count VIII;

3    (5) **<u>DENYING</u>** the motion as to Count IX;

4    (6) **<u>GRANTING</u>** the motion as to defendants Smith, Gibson and Brooks only in Count X,

5    and **<u>DENYING</u>** the motion as to defendants Lefler, Stevens, Daniel and Volden in Count X;

6    (7) **<u>GRANTING</u>** the motion as to defendants Smith, Gibson, and Brooks only in Count

7    XI, and **<u>DENYING</u>** the motion as to defendants Lefler, Stevens, Daniel and Volden in Count XI;

8    (8) **<u>GRANTING</u>** the motion as to Count XIII;

9    (9) **<u>GRANTING</u>** the motion as to Count XVI.

10   The parties should be aware of the following:

11   1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

12   this Report and Recommendation within fourteen days of receipt. These objections should be

13   titled "Objections to Magistrate Judge's Report and Recommendation" and should be

14   accompanied by points and authorities for consideration by the district judge.

15   2. That this Report and Recommendation is not an appealable order and that any notice of

16   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

17   until entry of judgment by the district court.

18

19   DATED: January 11, 2016.

20                                          _____
                                           WILLIAM G. COBB
21                                         UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

- 27 -